MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

VICTOR MANUEL MALDONADO, GUSTAVO PEREZ ZACA, ANTONIO MIGUEL JIMENEZ, and RICARDO ESPINOSA, *individually and on behalf of others similarly situated,*

|  |  |
|---|---|
| **COMPLAINT** | |

          *Plaintiffs*,

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

-against-

CAPTAIN MIKE'S SEAFOOD RESTAURANT, INC. (D/B/A MUDVILLE 9), FIUME LLC (D/B/A MUDVILLE 9), ERIC B. SCHWIMMER, MARK ANDRUS, and MIKE BAKALIAN.

**ECF Case**

          *Defendants.*

--------------------------------------------------------X

Plaintiffs Victor Manuel Maldonado, Gustavo Perez Zaca, Antonio Miguel Jimenez, and Ricardo Espinosa, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Captain Mike's Seafood Restaurant, Inc. (d/b/a Mudville 9), Fiume LLC (d/b/a Mudville 9), ("Defendant Corporations"), Eric B. Schwimmer, Mark Andrus, and Mike Bakalian, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Captain Mike's Seafood Restaurant, Inc. (d/b/a Mudville 9), Fiume LLC (d/b/a Mudville 9), Eric B. Schwimmer, Mark Andrus, and Mike Bakalian.

2.       Defendants own, operate, or control an American Restaurant, located at 126 Chambers Street, New York, New York 10007 operating under the name "Mudville 9".

3.      Upon information and belief, individual Defendants Eric B. Schwimmer, Mark Andrus and Mike Bakalian, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs were ostensibly employed as delivery workers at the restaurant located at 126 Chambers Street, New York, New York 10007.

5.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cleaning the basement, mopping and sweeping the basement, loading the kitchen with containers for the next day of work, packing the delivery orders, arranging the food stations, bringing products from neighboring restaurants such as ice, bringing up ice from the basement, buying ice at the supermarket when the ice machine stopped working, buying products at the supermarket such as bread and cigarettes, bringing up products for cooking and for deliveries, bringing up sodas from the basement to the first floor, unloading deliveries, organizing deliveries and merchandise, folding cardboard boxes, cleaning the water and flooding in the basement, taking the damaged refrigerators to the street, running errands for the manager such as going to the bank to withdraw or deposit money, and taking out the garbage (hereafter the "non-tipped duties").

6.    At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.    Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.    Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.    Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.    Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.    Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

12.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

13.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

14.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants

operate an American Restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

20.     Plaintiff Victor Manuel Maldonado ("Plaintiff Maldonado" or "Mr. Maldonado") is an adult individual residing in Bronx County, New York. Plaintiff Maldonado was employed by Defendants at Mudville 9 from approximately May 2018 until on or about August 2018.

21.     Plaintiff Gustavo Perez Zaca ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in Kings County, New York. Plaintiff Perez was employed by Defendants at Mudville 9 from approximately September 2017 until on or about October 9, 2018.

22.     Plaintiff Antonio Miguel Jimenez ("Plaintiff Jimenez" or "Mr. Jimenez") is an adult individual residing in Kings County, New York. Plaintiff Jimenez was employed by Defendants at Mudville 9 from approximately December 2016 until on or about October 9, 2018.

23.     Plaintiff Ricardo Espinosa ("Plaintiff Espinosa" or "Mr. Espinosa") is an adult individual residing in Kings County, New York. Plaintiff Espinosa was employed by Defendants at Mudville 9 from approximately April 2017 until on or about March 17, 2018 and then from approximately July 26, 2018 until on or about October 14, 2018.

### *Defendants*

24.     At all relevant times, Defendants owned, operated, or controlled an American Restaurant, located at 126 Chambers Street, New York, New York 10007 under the name "Mudville 9".

25.     Upon information and belief, Captain Mike's Seafood Restaurant, Inc. (d/b/a Mudville 9) is a domestic corporation organized and existing under the laws of the State of New

York. Upon information and belief, it maintains its principal place of business at 126 Chambers Street, New York, New York 10007.

26.    Upon information and belief, Fiume LLC (d/b/a Mudville 9) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 126 Chambers Street, New York, New York 10007.

27.    Defendant Eric B. Schwimmer is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Eric B. Schwimmer is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Eric B. Schwimmer possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.    Defendant Mark Andrus is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Mark Andrus is sued individually in his capacity as a manager of Defendant Corporations. Defendant Mark Andrus possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.    Defendant Mike Bakalian is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Mike Bakalian is sued

individually in his capacity as a manager of Defendant Corporations. Defendant Mike Bakalian possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

30.   Defendants operate an American Restaurant located in the Tribeca section of Manhattan in New York.

31.   Individual Defendants, Eric B. Schwimmer, Mark Andrus and Mike Bakalian, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

32.   Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

33.   Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

34.   Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

35.   In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

36.   Upon information and belief, Individual Defendant Eric B. Schwimmer operates Defendant Corporations as either alter egos of himself and/or fails to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

   a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

   b)   defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c)   transferring assets and debts freely as between all Defendants,

   d)   operating Defendant Corporations for their own benefit as the sole or majority shareholders,

   e)   operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

   f)   intermingling assets and debts of their own with Defendant Corporations,

   g)   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

   h)   Other actions evincing a failure to adhere to the corporate form.

37.   At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

38. In each year from 2016 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

39. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

40. Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

41. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Victor Manuel Maldonado*

42. Plaintiff Maldonado was employed by Defendants from approximately May 2018 until on or about August 2018.

43. Defendants ostensibly employed Plaintiff Maldonado as a delivery worker.

44. However, Plaintiff Maldonado was also required to spend a significant portion of his work day performing the non-tipped duties described above.

45. Although Plaintiff Maldonado ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

46. Plaintiff Maldonado regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

47.    Plaintiff Maldonado's work duties required neither discretion nor independent judgment.

48.    From approximately May 2018 until on or about July 15, 2018, Plaintiff Maldonado worked from approximately 5:00 p.m. until on or about 1:00 a.m., two days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., three days a week (typically 31 hours per week).

49.    From approximately July 16, 2018 until on or about August 2018, Plaintiff Maldonado worked from approximately 5:00 p.m. until on or about 1:00 a.m., one day a week and from approximately 5:00 p.m. until on or about 10:00 p.m., four days a week (typically 28 hours per week).

50.    Throughout his employment, Defendants paid Plaintiff Maldonado his wages by check.

51.    From approximately May 2018 until on or about August 2018, Defendants paid Plaintiff Maldonado $8.65 per hour.

52.    Defendants never granted Plaintiff Maldonado any breaks or meal periods of any kind.

53.    On a number of occasions, Defendants required Plaintiff Maldonado to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

54.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Maldonado regarding overtime and wages under the FLSA and NYLL.

55.     Defendants did not give any notice to Plaintiff Maldonado, in English and in Spanish (Plaintiff Maldonado's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

56.     Defendants required Plaintiff Maldonado to purchase "tools of the trade" with his own funds—including an electric bicycle and a helmet.

*Plaintiff Gustavo Perez Zaca*

57.     Plaintiff Perez was employed by Defendants from approximately September 2017 until on or about October 9, 2018.

58.     Defendants ostensibly employed Plaintiff Perez as a delivery worker.

59.     However, Plaintiff Perez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

60.     Although Plaintiff Perez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

61.     Plaintiff Perez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

62.     Plaintiff Perez's work duties required neither discretion nor independent judgment.

63.     Throughout his employment with Defendants, Plaintiff Perez regularly worked in excess of 40 hours per week.

64.     From approximately September 2017 until on or about February 2018, Plaintiff Perez worked from approximately 7:00 p.m. until on or about 2:00 a.m., or 2:30 a.m. five days a week and from approximately 1:00 p.m. until on or about 10:00 p.m., one day a week (typically 44 to 46.5 hours per week).

65.   From approximately February 2018 until on or about June 2018, Plaintiff Perez worked from approximately 5:00 p.m. until on or about 12:00 a.m., or 12:30 a.m. Mondays and Tuesdays, from approximately 5:00 p.m. until on or about 1:00 a.m., Wednesdays, Fridays and Saturdays, and from approximately 1:00 p.m. until on or about 10:00 p.m., Sundays (typically 47 to 48 hours per week).

66.   From approximately July 2018 until on or about September 2018, Plaintiff Perez worked as a delivery worker from approximately 5:00 p.m. until on or about 12:00 a.m., or 12:30 a.m. Mondays and Tuesdays, from approximately 5:00 p.m. until on or about 1:00 a.m., Wednesdays, Fridays and Saturdays, and from approximately 1:00 p.m. until on or about 10:00 p.m., on Sundays, three weeks per month; and, one week per month, as a delivery worker from approximately 5:00 p.m. until on or about 12:00 a.m., or 12:30 a.m. Mondays and Tuesdays, from approximately 5:00 p.m. until on or about 1:00 a.m., Wednesdays, Fridays and Saturdays, from approximately 1:00 p.m. until on or about 10:00 p.m., on Sundays, and as a dishwasher one eight-hour shift, 2 days a week (typically 47 to 56 hours per week).

67.   From approximately September 2018 until on or about October 9, 2018, Plaintiff Perez worked from approximately 5:00 p.m. until on or about 12:00 a.m., or 12:30 a.m. Mondays and Tuesdays, from approximately 5:00 p.m. until on or about 1:00 a.m., Fridays and Saturdays, and from approximately 1:00 p.m. until on or about 10:00 p.m., on Sundays (typically 39 to 40 hours per week).

68.   Throughout his employment, Defendants paid Plaintiff Perez his wages by check.

69.   However, from approximately July 2018 until on or about September 2018, Plaintiff Perez was paid in cash for the work he performed as a dishwasher on three occasions.

70.    From approximately September 2017 until on or about December 31, 2017, Defendants paid Plaintiff Perez $8.50 per hour for his first 40 hours and $12.75 per hour for the hours worked over 40.

71.    From approximately January 2018 until on or about January 28, 2018, Defendants paid Plaintiff Perez $13.00 per hour for his first 40 hours and $19.50 per hour for the hours worked over 40.

72.    From approximately January 29, 2018 until on or about October 9, 2018, Defendants paid Plaintiff Perez $8.65 per hour for his first 40 hours and $12.97 per hour for the hours worked over 40.

73.    From approximately July 2018 until on or about September 2018, Defendants paid Plaintiff Perez an extra $80 to $100 per day when he worked as a dishwasher.

74.    For approximately one week, Defendants did not pay Plaintiff Perez any wages for his work.

75.    Plaintiff Perez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

76.    For example, Defendants required Plaintiff Perez to work an additional 30 minutes past his scheduled departure time two to three days a week, and did not pay him for the additional time he worked.

77.    Defendants never granted Plaintiff Perez any breaks or meal periods of any kind.

78.    Plaintiff Perez was never notified by Defendants that his tips were being included as an offset for wages.

79.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Perez's wages.

80.    On a number of occasions, Defendants required Plaintiff Perez to sign a document, the contents of which he was not allowed to review in detail.

81.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

82.    Defendants did not provide Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

83.    In fact, Defendants adjusted Plaintiff Perez's paystubs so that they reflected inaccurate wages and hours worked. Specifically, his paystubs did not reflect the hours and pay for the dishwashing work he performed.

84.    Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

85.    Defendants required Plaintiff Perez to purchase "tools of the trade" with his own funds—including a bicycle, a helmet and a chain.

*Plaintiff Antonio Miguel Jimenez*

86.    Plaintiff Jimenez was employed by Defendants from approximately December 2016 until on or about October 9, 2018.

87.    Defendants ostensibly employed Plaintiff Jimenez as a delivery worker.

88.    However, Plaintiff Jimenez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

89.    Although Plaintiff Jimenez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

90.   Plaintiff Jimenez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

91.   Plaintiff Jimenez's work duties required neither discretion nor independent judgment.

92.   Throughout his employment with Defendants, Plaintiff Jimenez regularly worked in excess of 40 hours per week.

93.   From approximately December 2016 until on or about December 31, 2016, Plaintiff Jimenez worked from approximately 7:00 p.m. until on or about 2:15 a.m., four days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., two days a week (typically 39 hours per week).

94.   From approximately January 2017 until on or about February 2017, Plaintiff Jimenez worked from approximately 7:00 p.m. until on or about 2:15 a.m., four days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., to 10:30 p.m. two days a week (typically 39 to 40 hours per week).

95.   From approximately March 2017 until on or about October 9, 2018, Plaintiff Jimenez worked from approximately 6:00 p.m. until on or about 1:00 a.m., four days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., to 10:30 p.m. two days a week (typically 38 to 39 hours per week).

96.   Throughout his employment, Defendants paid Plaintiff Jimenez his wages by check.

97.   From approximately December 2016 until on or about May 2017, Defendants paid Plaintiff Jimenez $7.50 per hour.

98.   From approximately June 2017 until on or about December 2017, Defendants paid Plaintiff Jimenez $8.50 per hour.

99. From approximately January 2018 until on or about February 2018, Defendants paid Plaintiff Jimenez $13.00 per hour.

100. From approximately February 2018 until on or about October 9, 2018, Defendants paid Plaintiff Jimenez $8.65 per hour.

101. Plaintiff Jimenez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

102. For example, Defendants required Plaintiff Jimenez to work an additional 30 minutes to 4 hours and 45 minutes past his scheduled departure time throughout his employment, and did not pay him at the correct rate for the additional time he worked.

103. Defendants never granted Plaintiff Jimenez any breaks or meal periods of any kind.

104. Plaintiff Jimenez was never notified by Defendants that his tips were being included as an offset for wages.

105. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Jimenez's wages.

106. Plaintiff Jimenez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

107. On a number of occasions, Defendants required Plaintiff Jimenez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

108. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Jimenez regarding overtime and wages under the FLSA and NYLL.

109. Defendants did not provide Plaintiff Jimenez an accurate statement of wages, as required by NYLL 195(3).

110. In fact, Defendants adjusted Plaintiff Jimenez's paystubs so that they reflected inaccurate wages and hours worked.

111. Defendants did not give any notice to Plaintiff Jimenez, in English and in Spanish (Plaintiff Jimenez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

112. Defendants required Plaintiff Jimenez to purchase "tools of the trade" with his own funds—including two bicycles, two chains, a vest, and a helmet.

*Plaintiff Ricardo Espinosa*

113. Plaintiff Espinosa was employed by Defendants from approximately April 2017 until on or about March 17, 2018 and then from approximately July 26, 2018 until on or about October 14, 2018.

114. Defendants ostensibly employed Plaintiff Espinosa as a delivery worker.

115. However, Plaintiff Espinosa was also required to spend a significant portion of his work day performing the non-tipped duties described above.

116. Although Plaintiff Espinosa ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

117. Plaintiff Espinosa regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

118. Plaintiff Espinosa's work duties required neither discretion nor independent judgment.

119. From approximately April 2017 until on or about February 28, 2018, Plaintiff Espinosa worked from approximately 5:00 p.m. until on or about 10:00 p.m., three days a week

and from approximately 7:00 p.m. until on or about 2:00 a.m., three days a week (typically 36 hours per week).

120.  From approximately March 1, 2018 to March 17, 2018 and then from July 26, 2018 until on or about October 14, 2018, Plaintiff Espinosa worked from approximately 6:00 p.m. until on or about 1:00 a.m., five days a week (typically 35 hours per week).

121.  Throughout his employment, Defendants paid Plaintiff Espinosa his wages by check.

122.  From approximately April 2017 until on or about June 2017, Defendants paid Plaintiff Espinosa $7.50 per hour.

123.  From approximately May 2017 until on or about December 2017, Defendants paid Plaintiff Espinosa $8.50 per hour.

124.  From approximately January 2018 until on or about February 29, 2018, Defendants paid Plaintiff Espinosa $13.00 per hour.

125.  From approximately March 1, 2018 until on or about March 17, 2018 and then from July 26, 2018 until on or about October 14, 2018, Defendants paid Plaintiff Espinosa $8.65 per hour.

126.  For approximately one week, Defendants did not pay Plaintiff Espinosa any wages for his work.

127.  Defendants never granted Plaintiff Espinosa any breaks or meal periods of any kind.

128.  Plaintiff Espinosa was never notified by Defendants that his tips were being included as an offset for wages.

129.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Espinosa's wages.

130. Plaintiff Espinosa was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

131. On a number of occasions, Defendants required Plaintiff Espinosa to sign a document, the contents of which he was not allowed to review in detail.

132. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Espinosa regarding overtime and wages under the FLSA and NYLL.

133. Defendants did not give any notice to Plaintiff Espinosa, in English and in Spanish (Plaintiff Espinosa's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

134. Defendants required Plaintiff Espinosa to purchase "tools of the trade" with his own funds—including two bicycles, a helmet, and bicycle repairs.

*Defendants' General Employment Practices*

135. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

136. Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, inter alia, not paying them the wages they were owed for the hours they worked.

137. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

138. Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

139. Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

140. Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

141. Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

142. Plaintiffs and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

143. However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

144. New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

145. In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the

lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

146.  Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

147.  Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

148.  Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

149.  Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

150.  Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

151.  Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

152.  Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

153. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

154. Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

155. Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

156. Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were

employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

157.  At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records as required under the FLSA.

158.  The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

159.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

160.  At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

161.  At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

162.  Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

163.  Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

164.  Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

165.  Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

166.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

167.  Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

168.  Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

169.  Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

170.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

171.  At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

172.  Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

173. Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

174. Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

175. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

176. Defendants, in violation of N.Y. Lab. Law § 190 et seq., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

177. Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

178. Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

179. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

180. Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 et seq. and 12 N.Y.C.R.R. §§ 146-1.6.

181. Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

182.  Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

183.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

184.  Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

185.  Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

186.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

187.  With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross

wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

188.  Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

189.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

190.  Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

191.  Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

192.  Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

193.  Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

194.  Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)      Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)      Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this

action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days

following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal

is then pending, whichever is later, the total amount of judgment shall automatically increase by

fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        November 12, 2018

                              MICHAEL FAILLACE & ASSOCIATES, P.C.

                     By:     _____/s/ Michael Faillace_____
                             Michael Faillace [MF-8436]
                             60 East 42nd Street, Suite 4510
                             New York, New York 10165
                             Telephone: (212) 317-1200
                             Facsimile: (212) 317-1620
                             *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

October 15, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                          Antonio Miguel Jimenez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          15 de Octubre 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 15, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                     Gustavo Perez Zaca

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      15 de Octubre 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 15, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Ricardo Espinoza

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       15 de Octubre, 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 16, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                           Victor Manuel Maldonado

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           10 de Octubre

*Certified as a minority-owned business in the State of New York*