# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510  
New York, New York 10165  
_____

Telephone: (212) 317-1200  
Facsimile: (212) 317-1620

michael@faillacelaw.com

June 5, 2019

**VIA ECF**  
Hon. Gregory H. Woods  
Daniel Patrick Moynihan  
United States Courthouse  
500 Pearl St.  
New York, NY 10007-1312

            Re:    Maldonado et al v. Captain Mike's Seafood Restaurant, Inc. et al  
                    1:18-cv-10499-GHW

Your Honor:

      This office represents plaintiffs in the above referenced matter. Plaintiff writes to submit this letter setting forth our views on why the agreed upon settlement in this matter is fair.

      The parties have agreed to a negotiated settlement ("Agreement") after extensive settlement discussions before Your Honor. A copy of the proposed Agreement is attached hereto as "Exhibit A." We therefore ask the Court to approve the settlement, pursuant to <u>Cheeks v. Freeport Pancake House</u>, Inc., 796 F.3d 199 (2d Cir. 2015) and dismiss the case with prejudice.

1. **Background**

      Plaintiffs filed this Complaint against Defendants alleging claims for unpaid minimum wage, overtime wages, tools of trade, liquidated damages, interest, attorneys' fees, and costs pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (FLSA), the New York Minimum Wage Act, N.Y. Lab. Law § 650 *et seq.*, and the annual notice and wage statement requirements of the New York Labor Law (N.Y. Lab. Law. § 195).

      Plaintiff Victor Manuel Maldonado was employed by Defendants from approximately May 2018 until on or about August 2018. From May 2018 until July 15, 2018, Plaintiff Maldonado worked from approximately 5:00 p.m. until on or about 1:00 a.m., two days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., three days a week (typically 31 hours per week). From approximately July 16, 2018 until on or about August 2018, Plaintiff Maldonado worked from approximately 5:00 p.m. until on or about 1:00 a.m., one day a week and from approximately 5:00 p.m. until on or about 10:00 p.m., four days a week (typically 28 hours per week). Defendants paid Plaintiff Maldonado approximately $8.65 per hour.

Plaintiff Gustavo Perez Zaca was employed from approximately September 2017 until on or about October 9, 2018. From approximately September 2017 until on or about February 2018, Plaintiff Perez worked from approximately 7:00 p.m. until on or about 2:00 a.m., or 2:30 a.m. five days a week and from approximately 1:00 p.m. until on or about 10:00 p.m., one day a week, typically 44 to 46.5 hours per week. From approximately February 2018 until on or about June 2018, Plaintiff Perez worked from approximately 5:00 p.m. until on or about 12:00 a.m., or 12:30 a.m. Mondays and Tuesdays, from approximately 5:00 p.m. until on or about 1:00 a.m., Wednesdays, Fridays and Saturdays, and from approximately 1:00 p.m. until on or about 10:00 p.m., Sundays typically 47 to 48 hours per week. From approximately July 2018 until on or about September 2018, Plaintiff Perez worked as a delivery worker from approximately 5:00 p.m. until on or about 12:00 a.m., or 12:30 a.m. Mondays and Tuesdays, from approximately 5:00 p.m. until on or about 1:00 a.m., Wednesdays, Fridays and Saturdays, and from approximately 1:00 p.m. until on or about 10:00 p.m., on Sundays, three weeks per month; and, one week per month, as a delivery worker from approximately 5:00 p.m. until on or about 12:00 a.m., or 12:30 a.m. Mondays and Tuesdays, from approximately 5:00 p.m. until on or about 1:00 a.m., Wednesdays, Fridays and Saturdays, from approximately 1:00 p.m. until on or about 10:00 p.m., on Sundays, and as a dishwasher one eight-hour shift, 2 days a week typically 47 to 56 hours per week. From approximately September 2018 until on or about October 9, 2018, Plaintiff Perez worked from approximately 5:00 p.m. until on or about 12:00 a.m., or 12:30 a.m. Mondays and Tuesdays, from approximately 5:00 p.m. until on or about 1:00 a.m., Fridays and Saturdays, and from approximately 1:00 p.m. until on or about 10:00 p.m., on Sundays typically 39 to 40 hours per week. From approximately September 2017 until December 31, 2017, Defendants paid Plaintiff Perez $8.50 per hour for his first 40 hours and $12.75 per hour for the hours worked over 40. From approximately January 2018 until on or about January 28, 2018, Defendants paid Plaintiff Perez $13.00 per hour for his first 40 hours and $19.50 per hour for the hours worked over 40. From approximately January 29, 2018 until on or about October 9, 2018, Defendants paid Plaintiff Perez $8.65 per hour for his first 40 hours and $12.97 per hour for the hours worked over 40. From approximately July 2018 until on or about September 2018, Defendants paid Plaintiff Perez an extra $80 to $100 per day when he worked as a dishwasher. For approximately one week, Defendants did not pay Plaintiff Perez any wages for his work.

Plaintiff Antonio Miguel Jimenez was employed by Defendants from approximately December 2016 until on or about October 9, 2018. Plaintiff Jimenez worked from approximately 7:00 p.m. until on or about 2:15 a.m., four days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., two days a week, typically 39 hours per week. From approximately January 2017 until on or about February 2017, Plaintiff Jimenez worked from approximately 7:00 p.m. until on or about 2:15 a.m., four days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., to 10:30 p.m. two days a week typically 39 to 40 hours per week. From approximately March 2017 until on or about October 9, 2018, Plaintiff Jimenez worked from approximately 6:00 p.m. until on or about 1:00 a.m., four days a week and from approximately 5:00 p.m. until on or about 10:00 p.m., to 10:30 p.m. two days a week typically 38 to 39 hours per week. Throughout his employment, Defendants paid Plaintiff Jimenez his wages by check. From approximately December 2016 until on or about May 2017, Defendants paid Plaintiff Jimenez $7.50 per hour. From approximately June 2017 until on or about December 2017, Defendants paid Plaintiff Jimenez $8.50 per hour. From approximately January 2018 until on or about February 2018,

Page 3

Defendants paid Plaintiff Jimenez $13.00 per hour. From approximately February 2018 until on or about October 9, 2018, Defendants paid Plaintiff Jimenez $8.65 per hour.

Plaintiff Ricardo Espinosa was employed by Defendants from approximately April 2017 until on or about March 17, 2018 and then from approximately July 26, 2018 until on or about October 14, 2018. From approximately April 2017 until on or about February 28, 2018, Plaintiff Espinosa worked from approximately 5:00 p.m. until on or about 10:00 p.m., three days a week and from approximately 7:00 p.m. until on or about 2:00 a.m., three days a week typically 36 hours per week. From approximately March 1, 2018 to March 17, 2018 and then from July 26, 2018 until on or about October 14, 2018, Plaintiff Espinosa worked from approximately 6:00 p.m. until on or about 1:00 a.m., five days a week typically 35 hours per week. Throughout his employment, Defendants paid Plaintiff Espinosa his wages by check. From approximately April 2017 until on or about June 2017, Defendants paid Plaintiff Espinosa $7.50 per hour. From approximately May 2017 until on or about December 2017, Defendants paid Plaintiff Espinosa $8.50 per hour. From approximately January 2018 until on or about February 29, 2018, Defendants paid Plaintiff Espinosa $13.00 per hour. From approximately March 1, 2018 until on or about March 17, 2018 and then from July 26, 2018 until on or about October 14, 2018, Defendants paid Plaintiff Espinosa $8.65 per hour. For approximately one week, Defendants did not pay Plaintiff Espinosa any wages for his work.

Defendants categorically deny the allegations in the Complaint.

**2. Settlement Terms**

Plaintiffs allege they were entitled to back wages of approximately $32,228.15. Plaintiffs estimate that if they had recovered in full for all their claims, they would be entitled to approximately $114,776.99 which represents calculated actual damages, penalties, and interest, but excludes attorneys' fees and costs. A copy of Plaintiffs damages chart, breaking down each amount sought from Defendants and the allocation to each Plaintiff, is attached as "Exhibit B." The parties have agreed to settle this action for the total sum of $48,000.00. The settlement will be paid in 30 monthly installments.

Under *Lynn's Food*, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Throughout the litigation, there were sharply contested factual and legal disputes that went to the heart of Plaintiffs' claims. Defendants were adamant that Plaintiff worked less hours than they claimed, and indicated they were willing to provide witnesses to this effect. Defendants contested Plaintiffs assertions and maintained they paid wages which included a tip credit. Thus, following a lengthy mediation session

Considering the risks in this case outlined above, Plaintiff believes that this settlement is an excellent result, and should be approved as fair. *See Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

### 3. **Plaintiff's Attorneys' Fees are Fair and Reasonable**

Under the settlement, and in accordance with their retainer agreement with Plaintiffs, Plaintiffs' counsel will receive $16,451.33 from the settlement fund as attorneys' fees and costs. This represents $677 in costs and one third of the recovery in this litigation ($15,774.33) as well as a reduction in fees from what is identified in Plaintiffs' retainer agreement, which provides that forty percent of Plaintiffs' recovery will be retained by the firm plus costs.

Plaintiff's counsel's lodestar in this case is $13,347. A copy of Plaintiffs' billing record is attached as "Exhibit C." Mr. Michael Faillace's standard billing rate is $450 an hour (MF), Mr. Daniel Tannenbaum's standard billing rate is $350 an hour (DT), and Ms. Haleigh Amant's standard billing rate was $250 an hour (HA), though she was only briefly involved and did not perform much work in the case as she left the firm soon after being assigned the case and while it was still fairly recently filed. PL stands for work performed by a paralegal, at a standard billing rate of $100 an hour.

The amount provided to Plaintiff's counsel under the settlement is fair and reasonable (1.23 times the lodestar) and well within the range of fees typically awarded in cases in this Circuit (1.9 times the lodestar). *See Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding this firm a third, or 5.23 times the lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result." (quoting *Hyun v. Ippudo USA Holdings et al.*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016).; *Shapiro v. JPMorgan Chase & Co.*, No. 11-CV-7961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Given Plaintiffs' counsels' significant experience representing Plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain an excellent result with relatively low expense due to the parties' cooperative exchange of information and frequent and on-going negotiations.

Page 5

A brief biography of the attorneys who performed billed work in this matter is as follows:

I am the Managing Member of Michael Faillace & Associates, P.C, and have been in practice since 1983. From 1983 to 2000, I was in-house Employment Counsel with International Business Machines Corporation (IBM). I taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and am a nationally-renowned speaker and writer on employment law. I am also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

Daniel Tannenbaum is an associate at Michael Faillace & Associates, P.C. He graduated Hofstra Law School in 2008, and is admitted to the New York Bar, New Jersey Bar, United States District Court, Southern District of New York and the United States District Court, Eastern District of New York. Since law school he has practiced labor and employment law and commercial litigation at a number of law firms. Since joining Michael Faillace & Associates, P.C. in March 2019, he has been responsible for a caseload involving all aspects of the firm's employment docket in federal court.

Haleigh Amant was an associate at Michael Faillace & Associates, P.C. Since graduating law school in 2017 from the George Washington University Law school, she has been practicing strictly employment law and representing employees in wage and hour disputes.

Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

                         Respectfully submitted,

                         /s/Michael Faillace
                         Michael Faillace, Esq.
                         MICHAEL FAILLACE & ASSOCIATES, P.C.
                         Attorneys for the Plaintiff

Enclosures